## LORA L. MOSS, Appellant, v. FRANK BRANT et al.

### Division One, February 25, 1909.

1. **PAYMENT: Application: Preponderance of Evidence.** Where plaintiff and her then husband bought a ten-acre tract at the price of $2,000, on which there was a deed of trust for $400, and executed a second deed of trust on the same tract to the holder of the $400 note and a first deed of trust on another tract of seventy-five acres to secure the balance of $1,600, and in addition her husband put up $400 worth of notes as collateral security, on which $412 was collected and applied on the $1,600 note, and the trial court found that the collateral notes were given as a further security for the $1,600 note and not for the $400 note, and that finding is supported by the preponderance of the evidence, it will not be *held* that the $412 should have been applied on the $400 note secured by the first deed of trust and it declared thereby extinguished.

2. **DEED OF TRUST: Redemption: Wife.** Where a wife joined her husband in the execution of a deed of trust on their then homestead, and she as the innocent party thereafter secured a divorce from him, there are ordinarily only two ways of protecting her married rights—one, by paying off the indebtedness before sale; the other, by substantially complying with Secs. 4343 and 4344, R. S. 1899, in an attempt to redeem.

3. ———: ———: **No Cause of Action.** A petition which expressly charges that a deed of trust has been paid and fully discharged cannot be held to state a cause of action to redeem; nor can plaintiff be permitted, under such a petition, to redeem the property after a foreclosure of the deed of trust.

Appeal from De Kalb Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Hewitt & Hewitt* for appellant.

(1) Plaintiff has an inchoate right of dower as well also as the homestead right in the ten acres in question; either of which would entitle her to the relief prayed, or such relief as would be just and proper in the premises necessary to protect either of these

216 Sup—41

interests. R. S. 1899, secs. 2947, 3616; White v. Ing-
hram, 110 Mo. 483; Hack v. Rollin, 158 Mo. 188; Blandy
v. Asher, 72 Mo. 27. (2) Plaintiff, in addition to her
dower right, and right of homestead, also acquired
Oliver G. Mills' equity of redemption under the trust
deed securing the $1,600 note made by Mills and wife
to Ewart, by virtue of the execution sale, and sheriff's
deed in evidence. Defendants at the time of the ren-
dition of the judgment in favor of plaintiff had not
acquired any interest in either of the notes secured
by the trust deeds. The only right defendants ac-
quired under the purchase of the $400 note was the
right to have the payment of the debt and interest
secured thereby, and these rights were acquired after
the judgment and sale. Therefore, their right to col-
lect the money was not impaired by the judgment,
neither was their right prejudiced thereby. Both of
these incumbrances, if valid, and existing, were prior
to and superior to the judgment; and, therefore, de-
fendants had no right to attack the validity of the
judgment on account of the service had under the pro-
visions of R. S. 1899, sec. 582. He had acquired no
right to the equity of redemption in Mills. State v.
Seebold, 192 Mo. 730; 6 Am. and Eng. Ency. Law (2
Ed.), 1090; State ex rel. v. McIntosh, 205 Mo. 602.
(3) The sale under the trust deed of Ross et al.,
to Lahrman by trustee Brant was void, for the rea-
son the land advertised for sale was located in town-
ship No. 59, instead of 60, as described in the trust
deed and the trustee's deed. (4) There is no evidence
to support the finding that ''the payments on said
note were applied as directed by Oliver G. Mills.''
Although a debtor makes no express designation of
the debt to be paid, yet, if the circumstances attend-
ing the transaction are such as point out with a rea-
sonable certainty his intention, it must be made ac-
cordingly. 2 Am. and Eng. Ency. Law (2 Ed.), 450,

note 3. (5) The Ross note was the older debt; in fact the $1,600 debt had not been fully created at the time of the deposit of the $400 of collateral notes, and the Ross note was to become due two years after date, while the Mills $1,600 debt was to become due five years after the date thereof. Equity will require the application of the payment to the earlier of the two mortgages, especially as it becomes due more than three years before the $1,600 debt. Sanford v. Vanarsdale, 53 Hun 78; 2 Am. and Eng. Ency. Law (2 Ed.), 441, 447; Hessey v. Bennett, 28 Minn. 86; Bank v. Roosevelt, 9 Cow. (N. Y.) 409; Donnelly v. Wilson, 5 Leigh (Va.) 329. (6) A creditor cannot make an application that will be positively injurious to the debtor or even unreasonable or unjust. 2 Am. and Eng. Ency. Law (2 Ed.), 439; Clony v. Richardson, 34 Mo. 370; Murdock v. Clark, 88 Cal. 384; Bonnell v. Wilder, 67 Ill. 327; Frazier v. Lanham, 72 Md. 131; Heir v. Hawkins, 19 Vt. 26; Taylor v. Coleman, 20 Tex. 772. (7) And even though it be found that the debtor has made no express designation of the debt to be paid, yet if the circumstances attending the transaction are such as to point out with reasonable certainty his intention, it must be made accordingly. Draffen v. Boonville, 8 Mo. 395; 21 Cent. Law Jour.; p. 473; Robison v. Doolittle, 12 Vt. 346; Bank v. Benedict, 15 Conn. 438; Pierce v. Knight, 31 Vt. 701; Young v. Woodward, 44 N. H. 250; Gordon v. Hobart, 2 Story 264. (8) Where the payment is the same amount of the debt it may properly be inferred that it was intended that it should be applied to the former. Adams Ex. Co. v. Black, 66 Ind. 128; Seymour v. Van Slick, 8 Wend. (N. Y.) 493; 2 Am. and Eng. Ency. Law (2 Ed.), 451. (9) An application that will destroy the homestead should be avoided. Bank v. Hollingsworth, 78 Iowa 575. (10) A woman who has a right of dower subordinate to a mortgage on the premises of which she is dowable, is entitled

to redeem whether her dower right has become consummate by her husband's death or is still inchoate. 10 Am. and Eng. Ency. Law (2 Ed.), 166; 11 Ibid. 223.

*Spencer & Landis* and *Wm. M. Fitch* for respondents.

(1) It is incumbent upon the party alleging fraud to prove the same; it is never presumed. The failure of defendant Ekin to testify does not change this rule. Hoeller v. Haffner, 155 Mo. 589. (2) The appellate court, while not bound by the finding of facts of the trial court in an equity suit, will defer to its finding where the evidence is conflicting. Steyermark v. Landan, 121 Mo. App. 402; Tinker v. Kier, 195 Mo. 183. (3) Even had plaintiff been entitled to a homestead in the ten-acre tract, her failure to reside thereon after separation from her former husband, her immediate marriage after obtaining a divorce, and thereupon making her home upon the last husband's property, together with the fact that after her decree for alimony she directed the sheriff to levy upon and sell his ten-acre tract, constitute an express waiver of her homestead rights. 21 Cyc. 614, sec. 4, note 97; Parsons v. Cooley, 60 Iowa 268; Wilson v. Daniels, 79 Iowa 132. (4) Plaintiff cannot abandon his petition by setting up a reply containing a new or different cause of action from that contained in the petition. Therefore, the trial court properly held the question of plaintiff's right to redeem was not in issue under the pleadings. Stepp v. Livingston, 72 Mo. App. 179; Jackson v. Powell, 110 Mo. App. 252; Haynor v. Excelsior Springs, 108 S. W. 580. No reply is shown to have been filed in this case, nor any prayer to redeem filed. (5) Plaintiff claimed a right to redeem, but even if she had been entitled to raise that question by proper allegations in her petition yet such right is a statutory one, and she would have had to comply

with the statute giving her that right, which she failed
to do. R. S. 1899, sec. 4343; Sturgeon v. Mudd, 190
Mo. 209; McMillan v. Grayston, 83 Mo. App. 425;
Thorn & Hunkins Lime & Cement Co. v. Bank, 158 Mo.
272.

WOODSON, J.—This is an injunction proceed-
ing, instituted by plaintiff against the defendants in
the circuit court of DeKalb county, to prevent the
sheriff from selling certain real estate, located in that
county, under and by virtue of a certain deed of trust
to satisfy a debt, described therein, for the alleged
reason that the debt had been paid, and that the sher-
iff and the other defendants had conspired together
for the purpose of defrauding her out of her interest
therein by selling said real estate under said deed.

The petition upon which the case was tried is as
follows:

"Plaintiff for her first amended petition and
cause of action states that from the 2d day of Decem-
ber, A. D. 1899, until the 23d day of October, A. D.
1902, she was the lawful wife of the defendant, Oliver
G. Mills; that on the last-named date she was duly
divorced from the bonds of matrimony existing be-
tween her and the said Mills, she being the innocent
and injured party; that since said divorcement plain-
tiff has intermarried with Charles F. Moss; that dur-
ing the time the marital relation existed between plain-
tiff and defendant Mills, to-wit, on July 18, 1901, de-
fendant, Oliver G. Mills, had title to the lands herein-
after mentioned and described, on said date receiving
a deed from Ernest B. Ross et al., conveying said
property to him, the said defendant Mills; that there-
tofore and on the 13th day of June, A. D. 1901, the
said grantors to the said defendant Mills of the said
land, and before conveying the same to Mills, had
made and executed their certain deed of trust to one
A. B. Chrisman, trustee for James Ewart, conveying

or purporting to convey to the said trustee the said lands before mentioned as having been by the said Ernest B. Ross et al. sold and conveyed to defendant Mills, and described as follows: The south half of the south half of the northeast quarter of the northwest quarter of section number twenty-six, township number sixty, range number thirty-one, all in DeKalb county, Missouri; that the said trust deed is recorded in the records of DeKalb county in Book 36 at page 288 thereof; that said lands are of the reasonable value of fifteen hundred dollars and were at all times thereafter occupied and claimed as plaintiff's homestead; that on the 18th day of July, 1901, defendant Mills and this plaintiff, at that time his wife, executed to one A. B. Chrisman, trustee, a deed of trust to secure to one James Ewart the debt in said deed described, which said deed is recorded in Book No. 39 at page 132 thereof of the records of DeKalb county, Missouri, and which conveyed or purported to convey the south half of the south half of the northeast quarter of the northwest quarter of section 26, township 60, range 31, and other lands of defendant Mills, all of reasonable value of at least $4,000; that immediately after the execution of the said last-named deed of trust defendant Oliver G. Mills offered to this plaintiff, then his wife, such indignities as to render her condition intolerable; and his treatment of her was so inhuman and cruel that she was compelled to and did separate herself and infant from him and seek a divorce from him, and alimony for the support of herself and infant; that shortly after plaintiff left the defendant Oliver G. Mills, and about the time she commenced proceedings for a divorce, said defendant, with the purpose, design and intent to defraud plaintiff and deprive her of the support to which she was legally entitled as his wife, conspired with the defendant, James K. Ekin, to defraud this plaintiff, and the said Ekin was to and attempted to and is now aiding and

attempting to aid and assist said Mills in his wrong-
ful, fraudulent and unlawful efforts to defraud this
plaintiff of her rights as aforesaid, and to deprive
this plaintiff of obtaining support out of the property
of the said Mills, and the said defendant Mills, in
pursuance of the said conspiracy, agreement and fraud-
ulent combination with the said Ekin, defendant here-
in, did, by quitclaim deed, recorded at page 403 of
Book No. 25 of the books of the records of DeKalb
county, Missouri, convey to the said Ekin all the lands
hereinbefore in this petition described, as well also all
the lands whatsoever in the State of Missouri of which
said defendant Mills was at said time seized and pos-
sessed or in which he had any interest, that is to say,
all the lands owned by said Mills in the jurisdiction
of the said court, which said court is and was the
only court with jurisdiction to hear and determine
the above-mentioned suit of this plaintiff against the
said Oliver G. Mills for divorce and for alimony, and
for the support of plaintiff and her said infant child,
the child also of the said defendant Mills, or in any
wise aid plaintiff in obtaining her legal rights as the
innocent and injured wife of the said defendant Mills;
plaintiff further says that it was understood and
agreed by and between the said defendants Mills and
Ekin that the title of said lands should be held by
said Ekin for the use of said Mills until such time
as it could be disposed of and realized on, at which
time the proceeds should go to the said Mills; and that
said deed was voluntary and without consideration
from the said Ekin to the said Mills and was executed
to carry out and effectuate said defendant's fraudulent
scheme and conspiracy to cheat and defraud this
plaintiff aforesaid.

· "Plaintiff further states that thereafter, to-wit,
on the — day of ——, A. D., 1902, she filed in the
circuit court of DeKalb county, Missouri, her petition
for a divorce from the said Oliver G. Mills and prayed

for alimony in gross; that at the October term, 1902, of said court, a decree of divorce was duly granted her, divorcing her from the said Oliver G. Mills, and judgment and order allowing her alimony in the gross sum of $2,387.50 were made and entered, all of which will more fully appear from a copy of said judgment and order hereto attached and made a part hereof, marked 'Exhibit A.'

"Plaintiff further states that thereafter and on the — day of —— ——, 1902, execution duly issued out of the office of the clerk of the said circuit court of DeKalb county, Missouri, on said judgment, and was duly levied on all lands herein and in said quit-claim deed and in said trust deed described, the property of the said Oliver G. Mills, and was by the sheriff of this county duly and lawfully sold, at which said sale this plaintiff became the purchaser and is now the owner thereof; that thereafter and on the 3d day of May, 1903, the trust deed above mentioned as having been executed by Ernest B. Ross et al. to A. B. Chrisman, trustee for James Ewart, being still outstanding and in the hands of said Ewart, and being then and there apparently a legal debt and liability for the sum of four hundred dollars against the said described tract of land in section 26, township 60, range 31, and against the said Oliver G. Mills, but which said apparent debt and liability had in fact been fully paid off and discharged, viz., on the — day of ——, A. D. 1901, by the defendant Mills, then plaintiff's husband, but by inadvertence and mistake on the part of the then legal holder of said debt, the payment of the sums of money in discharge of said debt was placed as a credit upon the note and debt of the said Mills, secured by the other trust deed herein mentioned instead of being credited upon the note secured by the Ross trust deed aforesaid; said Mills in the further prosecution of his said fraud against this plaintiff and toward the consummation of his wicked, wrongful

and fraudulent design and conspiracy against the lawful rights of this plaintiff, conspired with the defendants Lahrman and Landis to aid and assist him, the said Mills, whereby the said Lahrman and Landis, for a consideration to be paid by the said Mills to said Lahrman and Landis, agreed to take the money which the said Mills then and there agreed to furnish sufficient to pay and discharge the debt against said last-mentioned lands, due and owing to the same James Ewart, as aforesaid, and purchase the said debt or pretend to purchase the same and take a pretended assignment of the same in the name of the defendant Lahrman, and foreclose said trust deed and either turn the proceeds over to said Mills or hold the said lands for his use and benefit, and thereby defeat the lawful rights of plaintiff and defraud plaintiff of her title to said lands.

"Plaintiff says that in pursuance of and toward the fulfillment of said agreement and consummation of said fraud, said Mills furnished said Landis with the money with which to buy said debt and security held as aforesaid by the said James Ewart, and that said Landis paid said money to said Ewart and took said security in the name of the said Lahrman, and the said Lahrman, toward the fulfillment of his unlawful, wicked and fraudulent agreement, is now pretending to be the lawful owner of said debt and security aforesaid; that in the prosecution of said wicked, wrongful and unlawful agreement and conspiracy so entered into as aforesaid between and by said Mills, Lahrman and Landis, said Lahrman has requested one Frank Brant, sheriff, now, of DeKalb county, Missouri, in whom the said trust deed vests authority to sell in case of the refusal, failure or inability of said Chrisman, trustee in said deed named, and the said Frank Brant, sheriff as aforesaid, successor to said Chrisman as aforesaid, is, at the instance and request of the said Lahrman, the pretended owner of

said debt and security, threatening to sell said lands under said trust deed, and is now advertising said lands for sale in the DeKalb County Democrat, a newspaper printed and published in Maysville, DeKalb county, Missouri, as will more fully appear by a copy of said publication hereto attached and marked 'Exhibit B' and made a part hereof, and will, if not restrained from so doing, sell all said lands and then and there and thereby cast a cloud on the title of plaintiff to said lands and thereby irreparably damage and injure this plaintiff. Plaintiff further states that she is without adequate and efficient remedy at law.

"Wherefore plaintiff prays that an injunction and restraining order be issued, directed against said defendants, Frank Brant and E. H. Lahrman and each of them, and that they and each of them, their servants, agents and representatives be enjoined from selling, assigning or disposing of said debt and security and from doing anything further toward the consummation of their fraudulent conspiracy, and that said injunction be made perpetual and that the said quitclaim deed to said Ekin be cancelled, declared void and held for naught, and that said debt mentioned and described in said trust deed be declared discharged and held for naught and for all other relief meet and proper."

There was a trial had before the court which resulted in a judgment for the defendants, and the plaintiff duly appealed to this court.

The facts of the case are substantially as follows:

On December 2, 1899, the plaintiff was lawfully married to the defendant Mills, and they lived together as man and wife until October 23, 1902, on which day she was granted a divorce from him on account of his cruel treatment of her. Sometime subsequent thereto she intermarried with Charles F. Moss. On July 18, 1901, while she was the wife of Mills, he

purchased ten acres of land, the south half of the south half of the northeast quarter of the northwest quarter of section 26, township 60, range 31, DeKalb county, Missouri. At the time of the purchase of the ten acres there was a deed of trust, dated June 13, 1901, upon it securing a note for $400 due one James Ewart, which debt Mills assumed to pay. The property was improved and was worth about $2,000. In order to enable Mills to pay for the property he borrowed $1,600 from said Ewart, who also held the $400 note and deed of trust against the ten-acre tract. To secure the $1,600 Mills and plaintiff, his then wife, executed to Ewart their note for $1,600, secured by a deed of trust on another tract of seventy-five acres of land he owned in sections 29 and 30, township 59, range 30, same county, and also covering the ten acres. As an additional security for said loan Ewart demanded and received from Mills other promissory notes he owned for the face value of $400. Shortly after acquiring the ten-acre tract Mills and his wife moved upon it and made it their home until the — day of —— ——, when they went to the State of Wyoming. Shortly after reaching Wyoming plaintiff left Mills because of his cruel treatment, and returned to DeKalb county, and has resided there ever since, but not upon any of the lands mentioned in this suit. Upon her marriage to Moss she went to and has resided at his home ever since.

Sometime prior to the institution of the divorce suit, Mills executed to James K. Ekin, one of the defendants, a quit-claim deed, conveying to him both the ten-acre and seventy-five-acre tracts of land, for the expressed consideration of $1,500.

In the divorce suit service was had upon Mills in the State of Wyoming by leaving with him the summons and a copy of the petition, as provided for by our code for serving non-residents, and the judgment was by default. Upon granting plaintiff her decree

the court also allowed and rendered judgment for her for the sum of $2,387.50 alimony, and upon that judgment an execution was issued from the circuit court of DeKalb county and levied upon the ten-acre tract and sold thereunder, and plaintiff became the purchaser thereof.

On March 18, 1903, defendant Landis, one of Mills's attorneys, who had knowledge of all the facts, took an assignment of the two notes for $400 and $1,600, respectively, secured by the deed of trust before mentioned, and paid the said Ewart the sum of $1,617.12 therefor, and on the 28th day of the same month Landis assigned the notes to defendant Lahrman.

Defendant Brant, sheriff, at request of Lahrman, advertised the ten-acre tract for sale under the deed of trust. At this time the deed securing the $1,600 note had been foreclosed. At this juncture this suit was filed, seeking to enjoin the sale of the ten-acre tract; but failing to give an injunction bond as required by the court, the temporary injunction was refused.

The plaintiff at the trial offered testimony to prove that Mills and the other defendants had entered into a fraudulent·conspiracy to defraud her out of her interest in and to the two pieces of land mentioned, and that he furnished all the money which passed and was paid over in all of the assignments of notes and transfers of the property above mentioned; and that they were made for the purpose of putting said property out of his hands and thereby shield and protect it from seizure and sale in satisfaction of her said judgment for alimony, and to exclude her from recovering her marital rights of dower and homestead therein. Plaintiff also introduced testimony tending to prove that Ewart collected the four hundred dollars' worth of notes placed in his hands by Mills as additional security when he purchased

the ten-acre tract, and applied the proceeds thereof, to-wit, $412, upon the $1,600, when it was the understanding and intention of the parties that it should be applied upon the $400 note, secured by deed of trust upon the ten-acre tract.

The defendants upon the other hand introduced testimony tending to prove that all of said assignments and transfers were made in good faith and for full and adequate consideration paid in each and all of said transactions; also that the said four hundred dollars' worth of collateral notes were placed in Ewart's hands as additional security for the $1,600 note, and that when collected the proceeds were applied upon the $1,600 note in pursuance to the agreement of the parties.

As before stated, the trial court found the facts for the defendants and rendered judgment accordingly in their favor, from which plaintiff appealed.

I. The record discloses the fact that plaintiff brought two suits in the circuit court of DeKalb county, looking toward the preservation and reclamation of her interests in the two pieces of real estate mentioned in this case. This one regards the ten-acre tract, and the other involved the seventy-five-acre tract. That case only involved the validity of the sale of that piece of property under the judgment for alimony. The judgment in that case was also against plaintiff and she appealed to this court, which was affirmed by this court. [Moss v. Fitch, 212 Mo. 484.]

In that case this court held that the judgment for alimony rendered against Mills was absolutely null and void because the trial court acquired no jurisdiction of his person by the service of the summons upon him in the State of Wyoming, and, consequently, the sheriff's sale of the seventy-five-acre tract under the execution based thereon was likewise null and void.

That case fully covers and finally disposes of the judgment for alimony and her claim of title to both pieces of property by virtue of her purchase at the execution sale under the judgment for alimony; and thereby leaves in this case only her claims regarding her marital rights of dower and homestead in the ten-acre tract.

II. If I correctly understand the position of counsel for appellant, it is this, that the evidence shows that the four hundred dollars' worth of notes put up by Mills with Ewart were by the agreement of the parties to be taken and held by him as collateral security for the $400 note, secured by deed of trust upon the ten-acre tract of land, and not as additional security for the $1,600 loan; that when he collected those collateral notes, under the agreement, he should have applied the proceeds thereof upon the $400 note, and thereby have extinguished that debt, and not have applied the same upon the $1,600 note, as the evidence shows he did; that notwithstanding that application of payment, a court of equity will in this case apply the maxim of, "Equity looks on that as done which ought to have been done," and by so doing the $400 debt and deed of trust securing the same should in good conscience and are in equity paid and discharged, which leaves the ten-acre tract free of all incumbrances except as to the deed of trust securing the $1,600 note; that the evidence shows that the $1,617.12 which Landis paid Ewart for the $1,600 and $400 notes was furnished by Mills, and was, in fact, his money, and that when so paid by him such payment extinguished all liens and incumbrances against both pieces of real estate, and left her dower and homestead rights therein in full force and effect, and unincumbered; and that all subsequent assignments of the notes and conveyances of the property were fraudulent and void, because conceived and executed

in pursuance to the fraudulent conspiracy before mentioned.

The difficulty we are confronted with in lending our concurrence to that contention is the fact that the trial court found all the facts before stated and contended for by counsel for appellant against her and in favor of the respondents. Counsel concede the findings of the court are against their client, but they excepted to those findings and earnestly contend that the evidence disclosed by this record does not sustain or warrant such findings, and since this is a chancery case this court has the right to review the testimony and make such findings as the evidence should require; and that by so doing the findings of this court would be contrary to those of the trial court, and in favor of appellant.

We have carefully read all the evidence of the case, and while we find some evidence which tends to prove appellant's position, yet we are not in a position to hold that the findings of the trial court were without evidence to support them, or that they were against the weight of the evidence; but upon the other hand, we are of the opinion that the weight preponderates in favor of the conclusions reached by the circuit court.

The witness Jones, who represented Ewart in making the loan, testified unequivocally that the four hundred dollars' worth of notes were placed in his hands as additional collateral security for the $1,600 note and not as security for the $400 note, and that when the notes matured he collected them and applied the proceeds thereof upon the $1,600 note according to the agreement.

This testimony is corroborated by the allegation of plaintiff's petition that the ten-acre tract was worth $2,000 and that the $400 note was secured by a first mortgage thereon, which was ample security therefor, and no reason is assigned or shown by the evidence

why he would want additional security for a note so well secured; but, upon the other hand, Mr. Jones testified that why he wanted the additional security for the $1,600 loan was that there was a first mortgage against the ten-acre tract for $400 and that he did not think that the seventy-five-acre tract and the ten-acre tract with the mortgage against it was sufficient security for the $1,600 loan, and he therefore demanded and received the notes mentioned as additional security for the $1,600 note.

And as regards the conspiracy alleged to have been entered into between the respondents for the purpose of defrauding appellant out of her property, we wish to state that if the record contains any evidence of its existence it is so weak and unpersuasive that no court would be justified in so holding, even in the absence of respondents' evidence, and when we weigh and consider it along and with that of appellant's, we are free to state that in our opinion the trial court could have found no other way, and that its conclusions were clearly and unquestionably correct.

Having reached the conclusions above stated, we must therefore hold that the ten-acre tract, the one involved in this case, was subject to the $1,600 deed of trust at the time of the institution of this suit; and she having joined her husband in its execution, there were but two ways open to her for protecting her marital rights—one was by paying off the indebtedness before the sale, or by redeeming the property after the sale, as is provided for by sections 4343 and 4344, Revised Statutes 1899. And it is conceded that she did neither, nor did she offer to do either. [Snow v. Bass, 174 Mo. 149.]

This court has uniformly held that the provisions of those sections must be substantially complied with before a court of equity will permit her to redeem. [Sturgeon v. Mudd, 190 Mo. 200.]

III.   There is another reason why appellant cannot prevail in her claim of her right of redemption, and that is, no such cause of action is stated in the petition.   Obviously it is drawn on the theory that the judgment for alimony was valid and binding upon defendant Mills, and that her purchase of the property at the execution sale under that judgment vested the legal title to the same in her, and that all transfers made by him were for the purpose of defrauding her out of her rights therein; and the clear object of this suit was to prevent further transfers and to remove the alleged fraudulent deeds as clouds from her title.

There are no allegations in the petition which charge that the property is incumbered by the deed of trust mentioned in the evidence and that she was willing to and had offered to redeem same, as provided by statute, but, upon the contrary, the petition expressly charges that the said deed of trust had been fully paid and should be released of record, because it constitutes a cloud upon her title.

The law is too well settled in this State to require citations of authority in support thereof, that one cause of action cannot be stated in the petition and a recovery be had upon another and different cause.

There are several other questions discussed by counsel for the respective parties, in their briefs, but since the foregoing observations fully dispose of the case, it is useless to prolong this opinion by discussing them.

We are, therefore, of the opinion that the judgment is for the right parties and that it should be affirmed.

It is so ordered.

All concur.